FILED
SUPERIOR COURT
OF GUAM

2018 MAY 11 PM 4: 59

CLERK OF COURT

BY:_____

# IN THE SUPERIOR COURT OF GUAM

| | |
|---|---|
| IN THE MATTER OF THE ESTATE | )     PROBATE CASE NO. PR0003-17 |
| OF | ) |
| DAVID S.N. MESA, | )     FINDINGS OF FACT AND CONCLUSIONS<br>)     OF LAW RE: PETITION FOR FINAL<br>)     DISTRIBUTION |
| DECEASED. | ) |

## Introduction

This matter came before the Honorable Maria T. Cenzon on January 11, 2018 for a hearing on Marie A. C. Mesa's ("Petitioner") Petition for Final Distribution. Petitioner was present and represented by Attorney Daniel Berman. Dela Marie Leon Guerrero ("Leon Guerrero") and Charlene Ninete ("Ninete") (collectively the "Objectors") were present and represented by Attorney Catherine Bejerana Camacho.

Petitioner contends this Court should distribute the lot and both homes, described below, solely to her since it was intended as gifts to the marital estate. Although no written contract exists, Petitioner argues: a) her contributions as "cohabitant/live-in partner" for seventeen (17) years and wife for seven (7) years and/or b) the GHURA loan are sufficient to transmute Decedent's separate property to community property.

Objectors opposed and argued distribution in accordance to 15 Guam Code Ann. § 903(b)(1) is appropriate since the properties at issue are Decedent's separate property. Objectors also contend the alleged oral agreement to transmute the character of the properties is unenforceable. Specifically reasoning Decedent's actions prior to his death suggests he intended his children would one day benefit from his property.

//

## Findings of fact

1. Decedent died intestate on December 20, 2015 on Guam.

2. At the time of his death, Decedent was married to Petitioner. Additionally, Decedent had four (4) biological children: Daughters Dela Marie Leon Guerrero, Charlene M. Ninete, and Chasidy C. Taijeron, and a son, Dick J. Taijeron.

3. Decedent and Petitioner were married in 2008, but cohabitated since 1991.

4. Decedent resided on Lot No. 32, Block No. 10, Tract 240, Astumbo, Dededo, Guam since 1977. In 1995, Decedent received a grant deed for said property from Guam Housing and Urban Renewal Authority ("GHURA").

5. On September 2009, Decedent and Petitioner executed a Note and Mortgage in favor of GHURA (the "GHURA loan"). Under the federal program, the pair obtained a $60,000 loan which was utilized to build the concrete house described below. Payment of the loan is deferred for fifteen (15) years so long as the pair continues to abide by the terms of the program. For every year the pair *or their successors* reside on the property, payment of 1/15th is credited towards repayment of the debt. *See* Decl. of Dela Marie Mesa Leon Guerrero, Ex. B (Dec. 15, 2017).

6. No written instrument transmuting the characterization of the properties from Decedent's separate property into community property exists.

7. On January 6, 2017, Petitioner filed for Administration and Probate of Decedent's estate. Having heard Petitioner's objection, the Court denied Leon Guerrero's request to serve as co-administratrix for Decedent's estate. Thus, Petitioner was appointed as the sole Administratrix of the Estate of the Decedent. *See* Order Appointed Administratrix (Apr. 18, 2017).

8. Decedent's estate consists of personal and real property. However, the parties are only in dispute regarding the distribution of the real property. Decedent's real property includes: a) a concrete house located on Lot No. 32, Block No. 10, Tract 240, Astumbo, Dededo, Guam (hereinafter "concrete house"); b) a second semi-concrete house located on Lot

No. 32, Block No. 10, Tract 240, Astumbo, Dededo, Guam (hereinafter "semi-concrete house"); and c) the lot where these houses were built (hereinafter "Dededo lot"). Decedent's properties are valued at a) $65,000 for the concrete house, b) $20,000 for the semi-concrete house, and c) $65,000 for the Dededo lot.[1] *See* Decl. of Dela Marie Mesa Leon Guerrero, Ex. E, *supra*.

9. In addition to the written filings, the Court heard the sworn testimony of Petitioner and Objectors on January 11, 2018 at the Final Distribution Hearing. The parties testified to Decedent's intent regarding his property.

10. What was the testimony of each

## Conclusions of law

A. Characterization of Property – Through Decedent's conduct and actions

1. Separate property is defined as property acquired by either spouse *before* marriage or after entry of a decree of dissolution of marriage. 15 GCA § 6101(a). The parties do not dispute the lot was initially Decedent's separate property because it was acquired by Decedent prior to his marriage with Petitioner. At issue is whether the oral agreement "that both houses and the property [will] now be considered part of [the] marriage" is enforceable. *See* Decl. of Pet., at p. 4 (Dec. 29, 2017).

2. The Guam Probate Code is substantially similar to the California Probate Code as it was in 1953, thus the Court looks to California case law for interpretation. *Zahnen v. Limtiaco*, 2008 Guam 5 ¶ 17 (citations omitted). "It has long been settled in California that a husband and wife may, by contract, transmute separate property into community property or community property into the separate property of the other spouse." *Sablan v. Sablan*, 2017 Guam 3, ¶ 30. (citing

[1] Petitioner filed an inventory and appraisement of Decedent's estate which suggests the combined value of the real property combined is $80,000; $60,000 for the concrete house and $20,000 for the semi-concrete house. *See* Inventory and Appraisement (Nov. 13, 2017). However, Petitioner did not object to the Broker's Price Opinion submitted by Objectors. Decl. of Marie A. C. Mesa, at p. 5. Therefore, the Court will accept the values of the properties as described above.

*Perkins v. Sunset Tel. & Tel. Co.*, 103 P. 190, 193–94 (Cal. 1909); In re Marriage of Jafeman, 105 Cal. Rptr. 483, 490 (Ct. App. 1972)). (emphasis added). The Supreme Court of Guam has yet to enforce an oral transmutation to change the characterization of property. Instead, it has only enforced transmutations where a deed was properly executed. *See Sablan*, 2017 Guam 3 ¶ 37 (holding that by executing a quitclaim deed, Wife transferred her community property interest in the property to Husband, and as a result, Husband owns the entire property as his separate property).

3. Prior to 1994, California courts enforced oral transmutations, until it enacted Family Code Section 852(a) requiring that a transmutation of real or personal property must be in writing. Guam, on the other hand, has not enacted such a statute.

4. Case law which enforced oral transmutations look to "acts and conduct in confirmation" of the oral agreement. *Woods v. Sec. First Nat. Bank of Los Angeles*, 46 Cal. 2d 697, 701, 299 P.2d 657, 659 (1956) (citing *Kenney v. Kenney*, 220 Cal. 134 (1946); *Handley v. Handley*, 113 Cal.App.2d 280 (1952); *In re Estate of Piatt*, 81 Cal.App.2d 348, 183 P.2d 919) (1947)).

5. In this case, Petitioner argued her contributions through financial support and physical labor was sufficient to confirm the alleged oral agreement. Petitioner states for nearly seventeen (17) years the income she earned was utilized to support Decedent and fund the improvements made on the houses. For example, in 1998, the pair constructed a semi-concrete house on the lot. Additionally, in 2008, the Petitioner and Decedent applied for a Home Depot Credit Card to purchase materials to repair the floors, windows, roof, and other improvements on the semi-concrete house. Further that these repairs were personally performed by her and Decedent.

6. Objectors on the other hand, presented evidence of Decedent's actions which demonstrate the property was intended to remain as separate property. First, Decedent did not formally transmute the character of the property through a written document. Further, Decedent allowed his children to reside on the lot, even up to his death. If the Decedent intended the property to be a gift to the marriage, the Objectors proffer, he could have chosen to live on the property *exclusively* with his spouse. Leon Guerrero also testified her father assured her and her siblings that the land would remain "in the family," and after his death the property will not be owned merely by one person. Digital Recording at 3:36:50 (Final Distribution, Jan. 11, 2018). Ninete also testified that her father constantly indicated the Dededo lot would be available to everybody – his wife and his children – after his death. *Id.* at 3:50:40.

7. Accordingly, the Court is not convinced that Decedent's actions and conduct was in confirmation of an alleged oral agreement to transfer the lot and semi-concrete house as part of the community. The Court infers Decedent's intent through testimony made by Objectors and Petitioner. Petitioner testified Decedent wanted *her* to decide which of *his* grandchildren deserves the semi-concrete house, after *her* death. Digital Recording at 3:26:20 (Final Distribution, Jan. 11, 2018) (emphasis added). More importantly, Petitioner denied it was Decedent's intention to exclude his children from the property and that they decided to get married so *she* would not be excluded from the property. *Id.* at 3:27:10 to 3:27:38 (emphasis added). These statements evidence an intent by the Decedent to *include* Petitioner, but not to *exclude* Decedent's children on the Dededo lot. Thus, the Court finds, the Dededo lot and semi-concrete house were intended to remain as Decedent's separate property.

//

//

## B. Effect of GHURA Loan

1. Petitioner also contends the 2009 GHURA loan is evidence of Decedent's intent to transmute the separate property to community property.

2. Generally, a transmutation of separate property does not occur if the name of the other spouse is added to notes, mortgages, or contracts in connection with the purchase or acquisition of what, otherwise, is uncontestably separate property. 37 Am. Jur. Proof of Facts 2d 379 (Originally published in 1984).

3. Thus, where part of the purchase price is separate funds and the balance is borrowed on a mortgage on the property and a note signed by both spouses by requirement of the mortgagee, the property is separate property unless the mortgage is thereafter paid from community funds and the property is considered community property by the parties. *Id.* (citing *Horton v. Horton*, 35 Ariz. 378, 381, 278 P. 370, 371 (1929)).

4. In 2009, Decedent and Petitioner obtained a $60,000 loan from GHURA to construct the concrete house. The Dededo lot and semi-concrete house were used as collateral for the loan. According to Petitioner, the pair utilized community funds to pay $800 in closing costs for the loan. The loan does not require repayment so long as the pair or their successors continue to reside on the property. To this date, the pair did not utilize any community funds to pay the GHURA loan.

5. The Court finds that the 2009 GHURA loan does not affect the character of the Dededo lot and semi-concrete house which is the Decedent's separate property. First, while closing cost payments paid out of community funds relates to Petitioner's community interest in the property, "such a community interest …does not affect the underlying character of the Property itself as separate property under 19 GCA § 6101(a)(6), the title to the Property, or [Decedent's] ability to freely transfer the Property." *Damian v. Damian,* 2015 Guam 12 ¶38.

Secondly, neither Decedent nor Petitioner utilized community – or *any* – funds to *repay* the loan. Lastly, as analyzed above, the property was not considered community property by Decedent. Therefore, the Court finds the Dededo lot and semi-concrete house are Decedent's separate property.

C. Characterization of Concrete House

1. Community property is defined as property acquired by either spouse during marriage which is not separate property. 19 GCA § 6101(b). Whereas community debt is defined as debt contracted or incurred by either or both spouses during marriage which is not a separate debt. 19 GCA § 6102(b).

2. The parties were married in 2008 and the GHURA loan was obtained in 2009. The loan was obtained to build the concrete house. In 2009, construction of the concrete house was complete. From 2009 to the Decedent's death, the concrete house was the primary residence of Decedent and Petitioner.

3. Since the loan and construction of the concrete house was obtained *during* the marriage, the Court determines the concrete house is community property and the GHURA loan is community debt. Homestead provision in Guam law?

D. Distribution of Property

1. The separate property of a person who dies intestate is distributed pursuant to Title 15, Chapter 9 of the Guam Code Annotated. 15 GCA § 901. Guam law states, if a decedent leaves a surviving spouse and more than one living child, the decedent's separate estate goes one-third (1/3) to the decedent's surviving spouse and the remainder in equal shares to the decedent's children. 15 GCA § 903(b)(1).

2. Conversely, the community property of a person who dies intestate is distributed pursuant to Title 15, Chapter 10 of the Guam Code Annotated. 15 GCA § 1001. In that instance, one-half (1/2) of the community property belongs to the surviving spouse; the other half (1/2) is subject to the testamentary disposition of the decedent, and in the absence thereof goes to the surviving spouse. *Id.*

3. Having found the lot and semi-concrete house, valued at $65,000 and $20,000 respectively, as separate property, the Court determines said property shall be distributed pursuant to 15 GCA § 903(b)(1).

4. In addition, since the concrete house, valued at $65,000, was determined as community property, the Court finds distribution pursuant to 15 GCA § 1001 is appropriate.

## Conclusion and Order

For the reasons provided above, the Court hereby DENIES in part Petitioner's Petition for Final Distribution regarding the Dededo lot and semi-concrete house. Further, the Court hereby GRANTS Petitioner's Petition for Final Distribution regarding the concrete house. The Court also ORDERS Adminsitratrix to prepare and submit a Proposed Order or Decree for Final Distribution, consistent with these findings within thirty (30) days of the issuance of these findings.

**SO ORDERED** this _____ **MAY 1 1 2018** _____.

**HONORABLE MARIA T. CENZON**
**JUDGE, SUPERIOR COURT OF GUAM**

SERVICE VIA COURT BOX

I acknowledge that a copy of the original hereto was placed in the court box of:
Berman O'Connor & Mann
Catherine B. Camacho
Date: 5·11·18 Time: 5:00 PM
A. Soto
Deputy Clerk, Superior Court of Guam